UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANIER MARIELA CASTRO LUQUEZ,

Petitioner,

v.

MARKWAYNE MULLIN; DAVID VENTURELLA; JULIO HERNANDEZ; and BRUCE SCOTT,

Respondents.

C26-3351 TSZ

ORDER

THIS MATTER comes before the Court on a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2241, docket no. 1. Having reviewed the petition, the opposition to the petition, and the evidence submitted, the Court enters the following order.

**Background**

Petitioner is a citizen of the Republic of Nicaragua who arrived in the United States on April 28, 2024. *See* Form I-94, Ex. A to Pet. (docket no. 1-2); Truong Decl. at ¶ 4 (docket no. 5). Upon arrival at an international airport in Florida, she attended a prearranged inspection and was paroled into the U.S. under the Humanitarian Parole for Cubans, Haitians, Nicaraguans, and Venezuelans program. Pet. at ¶ 2 (docket no. 1); Truong Decl. at ¶ 5 (docket no. 5). Petitioner then received a Form I-94, with an expiration date of June 12, 2025. Form I-94, Ex. A to Pet. (docket no. 1-2). She applied

for asylum and withholding of removal in December 2024, and her application remains pending to this day. *See* I-589 Receipt, Ex. B to Pet. (docket no. 1-3); Truong Decl. at ¶ 6 (docket no. 5). She also received work authorization and was living without incident in Fort Myers, Florida. *See* Pet. at ¶ 3 (docket no. 1); Work Authorization, Ex. C to Pet. (docket 1-4). On June 12, 2025 (the expiration date on her Form I-94), petitioner was sent a notice of termination of parole. *See* Notice, Ex. 2 to Clark Decl. at 1 (docket no 6-2). No further action appears to have been taken by the Government at that time,[1] and for over a year, petitioner continued living in Fort Myers, Florida.

On July 11, 2026, officers with United States Immigration and Customs Enforcement ("ICE") pulled over petitioner's vehicle, and based on "her immigration history of being paroled over a year ago," the officers detained her. *See* Report, Ex. 1 to Clark Decl. (docket no. 6-1); Truong Decl. at ¶ 9 (docket no. 5). She was then issued a Notice to Appear ("NTA"), which charged her as subject to removal under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(I). NTA, Ex. 3 to Clark Decl. (docket no. 6-3); Truong Decl. ¶ 10 (docket no. 5). On July 28, 2026, she was transferred from a processing center in Texas to the Northwest ICE Processing Center ("NWIPC"), where she is currently in custody. Truong Decl. ¶¶ 14–17 (docket no. 5).

Petitioner now seeks habeas relief, arguing that her detention violates the Due Process Clause of the Fifth Amendment. Pet. at ¶¶ 35–46 (docket no. 1). Respondents

---

[1] A Spanish version of a Form I-94 that was submitted by respondents (other than Bruce Scott, who is not represented by the U.S. Attorney's Office) could, however, be read to suggest that petitioner's status as a Nicaraguan Humanitarian Parolee ("NHP") was extended until at least "April 27, 2026." Ex. 2 to Clark Decl. at 3 (docket no. 6-2).

assert that petitioner's detention comports with due process; they argue that petitioner's parole was terminated, which makes her subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and reduces her liberty interest and expectations under the Due Process Clause. *See* Return at 6–9 (docket no. 4).

**Discussion**

The Court has authority to grant a writ of habeas corpus to an individual who is "in custody in violation of the Constitution or law or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3).

**A. Parole and Petitioner's Detention**

An applicant for admission to the United States may receive humanitarian parole on a "case-by-case basis." *Colmenarez v. Hernandez*, 2026 WL 850535, at *2 (W.D. Wash. Mar. 27, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). Humanitarian parole allows an individual to enter the country without effectuating a formal "admission" for purposes of immigration law. 8 U.S.C. § 1182(d)(5)(A).

Two processes can lead to the termination of humanitarian parole. "First, parole terminates automatically if the noncitizen departs from the United States or 'at the expiration of the time for which parole was authorized.'" *Colmenarez*, 2026 WL 850535, at *3 (quoting 8 C.F.R. § 212.5(e)(1)). Automatic termination does not require written notice under the regulations. *Id.* Second, parole may be terminated if "the purpose for which parole was authorized" was accomplished, or if an authorized official from the United States Department of Homeland Security ("DHS") determines "that 'neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States.'" *Id.* (quoting 8 C.F.R. § 212.5(e)(2)(i)). This form of

termination requires written notice, which can come in the form of an NTA. 8 C.F.R. § 212.5(e)(2)(i).

Whether terminated automatically or by notice, the regulations require that upon revocation of parole, further inspections or hearings shall be conducted, or "any order of exclusion, deportation, or removal previously entered shall be executed." *Dieng v. Hermosillo*, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026) (quoting 8 C.F.R. § 212.5(e)(2)(i)); *see also* 8 C.F.R. § 212.5(e)(1)(ii) (explaining that, aside from written notice, the procedures of paragraph (e)(2) apply to noncitizens still in the country). Crucially, if the order cannot be executed "within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." *Id.* (quoting 8 C.F.R. § 212.5(e)(2)(i)). Thus, when parole "has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Colmenarez*, 2026 WL 850535, at *3.

Respondents contend that petitioner's parole "was terminated, by notice twice": first on June 12, 2025, when her parole automatically expired and she received a notice letter, and then on July 11, 2026, when she was issued an NTA after being detained. *See* Return at 7 (docket no. 4). But taking respondents' assertion as true as to either of these termination dates, petitioner's current detention is not justified.

Petitioner's parole expired on June 12, 2025, and respondents waited for over a year before taking any action to effectuate a removal. *See* Pet. at ¶ 7. As other courts in

this District have recognized, a "re-detention [around] one year after [petitioner's] parole expired implies that her humanitarian parole was extended beyond the initial expiration date and, thereafter, written notice was required." *Colmenarez*, 2026 WL 850535, at *5. Given that an exclusion, deportation, or removal order was not effectuated within a reasonable time after automatic termination of parole and given that no determination was made that the public interest requires petitioner's custody, the Court finds that petitioner's parole was extended past June 12, 2025, and that, under the governing regulations, she was entitled to written notice before being detained. *See* 8 C.F.R. § 212.5(e)(2)(i); *Dieng*, 2026 WL 411857, at *6.

Respondents' suggestion that petitioner's parole was terminated when she received an NTA after her detention lacks merit. An NTA can, at times, terminate parole. *See* 8 C.F.R. § 212.5(e)(2)(i) ("When a charging document is served on the [noncitizen], the charging document will constitute written notice of termination of parole, unless otherwise specified."). But the problem here is that the NTA was issued *after* petitioner's detention, so respondent relies on a justification for detention that did not exist until *after* the detention began. *See* Truong Decl. ¶¶ 9–11. The Court rejects "the Government's assertion that it satisfied the statutory and regulatory requirements for 'on notice' termination of parole through service of an NTA that 'does not mention Petitioner's parole, let alone provide any basis for the revocation, and … was served on Petitioner after [s]he was arrested and detained.'" *Kozlenkko v. Hernandez*, 2026 WL 2905404, at *4 (W.D. Wash. Sept. 28, 2026) (citing *Zaika v. Field Off. Dir.*, 2026 WL 1194625, at *3 (W.D. Wash. May 1, 2026)). In addition, to terminate parole via NTA, either the purpose of the parole must be accomplished or an authorized DHS official must find that "neither

humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen].” 8 C.F.R. § 212.5(e)(2)(i). Here, the NTA does not mention—much less demonstrate—and respondents do not argue that either of these requirements were satisfied. See NTA, Ex. 3 to Clark Decl. (docket no. 6-3); see also Return at 7 (docket no. 4).

**B. Due Process**

Whether the manner in which an alien was re-detained comported with due process is analyzed pursuant to the three-part standard set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). See *G.S. v. Hermosillo*, 2026 WL 179962, at *2 (W.D. Wash. Jan. 22, 2026). All three *Mathews* factors weigh in petitioner’s favor here. Humanitarian parolees have a “weighty” liberty interest, which “may only be revoked through methods that comport with due process.” *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Martinez v. Mullin*, 2026 WL 2426069, at *4 (W.D. Wash. Aug. 19, 2026) (“[C]ourts in this district have consistently concluded that individuals such as Petitioner—who have been released on parole under § 1182(d)(5)(A) and have lived with relative freedom in the United States for several years—have a protected liberty interest in not being redetained.”). Second, “[t]he risk of erroneous deprivation is significant where,” as here, “the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained.” *Dieng*, 2026 WL 411857, at *8; *Torres v. Hermosillo*, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026) (emphasizing the importance of the procedures in 8 C.F.R. § 212.5). Third, although respondents have a strong interest in the enforcement of immigration laws, see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the process required here by 8 C.F.R. § 212.5 does

"not impermissibly burden[]" respondents because they are "required to follow [their] own regulations," Torres, 2026 WL 145715, at *8 (quoting O.F.B. v. Maldonado, 810 F. Supp. 3d 394, 405 (E.D.N.Y. 2025)).

Respondents point to authority from this District to argue that a revoked parole undermines a habeas petitioner's entitlement to relief. See Return at 8 (docket no. 4) (citing Datis v. Hermosillo, No. 26-cv-1896, Order at 4 (docket no. 14) (W.D. Wash. July 15, 2026), and Pantoja Sanchez v. Hernandez, 2026 WL 1506130 (W.D. Wash. May 29, 2026)). The cases cited by respondents, however, are distinguishable. Both Datis and Pantoja Sanchez rejected petitioners' claims that they were eligible for discretionary detention and a bond hearing under 8 U.S.C. § 1226. See Datis, Order at 4; Pantoja Sanchez, 2026 WL 1506130, at *3. But importantly, neither Datis nor Pantoja Sanchez addressed violations of 8 C.F.R. § 212.5(e)(2)(i), which as described, sets forth particular rules for how parole may be revoked. By contrast, relief is warranted here in light of the Government's failure to terminate petitioner's parole in accordance with that regulation.

Petitioner has shown that her detention violates both the regulations regarding parole and her constitutional right to due process. The Court thus orders her immediate release. See 28 U.S.C. § 2241(c)(3).

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The petition for a writ of habeas corpus, docket no. 1, is GRANTED, and respondents shall RELEASE petitioner Anier Mariela Castro Luquez from custody at the NWIPC within twenty-four (24) hours of the entry of this order;

(2) Within forty-eight (48) hours of the entry of this Order, respondents shall file a declaration confirming that petitioner has been released from custody;

(3) Respondents shall not re-detain petitioner without complying with the pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e), unless probable cause exists for believing petitioner has committed or is attempting to commit a criminal offense;

(4) The Clerk is directed to enter judgment consistent with this Order after the declaration required by Paragraph 2, above, has been filed, to send a copy of the Judgment and this Order to all counsel of record, and to CLOSE this case.

IT IS SO ORDERED.

Dated this 5th day of October, 2026.

Thomas S. Zilly
United States District Judge